### THE STATE v. THOMAS BROWN.

Submitted March 23, 1911—Decided February 27, 1912.

1. Sales of liquor made by a duly licensed wholesale vendor to customers not residing within the territory covered by his license, and which are completed by the delivery thereof at the place of the customer's residence, are in violation of the provisions of the statute regulating the sale of spirituous, vinous, malt and brewed liquors.

2. Such sales are a violation of the statute even though the delivery is not made by the vendor personally, or by his ordinary employes, but by a common carrier who is selected by him to transport the goods and deliver them to the customer.

3. A person convicted of crime, who takes advantage of the liberal review provided by section 136 of the Criminal Procedure act, relinquishes any advantage which might have come to him by reason of mistakes made by the court at the trial, unless he can show that he has suffered manifest wrong or injury thereby.

On error to Burlington Quarter Sessions.

Before GUMMERE, CHIEF JUSTICE, and Justice TREN-CHARD.

For the plaintiff in error, *Davis & Davis* (*Ashbridge & Moone*, of the Philadelphia bar, with them on the brief).

For the state, *Samuel A. Atkinson*, prosecutor of the pleas.

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. Brown, the defendant, was convicted in the Burlington Quarter Sessions upon an indictment charging him with the habitual sale of liquor contrary to law. The present writ of error challenges the validity of that conviction, and the case comes up for consideration under the one hundred and thirty-sixth section of the Criminal Procedure act.

The proofs showed that the defendant had been granted a wholesale liquor license by the excise board of the city of Burlington, authorizing him to carry on business under that license at Nos. 30 and 32 Delaware avenue, in that city. It further appeared that it was the custom of Brown to send an employe named Spoon to the town of Roebling, located in the same county, for the 'purpose of soliciting in that town orders for liquor; that it was the custom of Brown, upon receipt of these orders, to fill such as met with his approval, and to decline those which he disapproved. Those which were accepted were filled from the common stock in Brown's place of business, and marked with the name and address of the buyer; some of the packages so marked were then delivered by Brown's own wagon and driver to the purchasers in Roebling, and others were delivered by an expressman named Shedaker,

to whom they were turned over by Brown for that purpose. Sometimes the money to pay for the liquor thus ordered would accompany the order; at other times it would be paid upon the delivery to the purchaser. So far as those sales are concerned, which were completed by delivery from the defendant's wagon in the town of Roebling, the case is controlled by our decision in *State* v. *Kind*, 51 *Vroom* 176; *affirmed, Id.* 466. In that case the defendant, holding a wholesale liquor license which authorized him to do business in Atlantic county, accepted orders from parties desiring to purchase and who resided in Vineland, in the county of Cumberland. Such intending purchasers made their payments at the time of sending in their orders. The orders were filled by delivery in Vineland from the defendant's wagon. It was held that the place of sale was controlled, not by the fact that the payments accompanied the orders, and were received at the defendant's place of business with the orders, but by the consideration that delivery in Vineland was essential to complete the transaction. The sales in the present case, therefore, which were completed by deliveries from the defendant's wagon in the town of Roebling, were in violation of law because of the fact that the defendant had no license to sell outside of the town of Burlington.

As to the sales, which were completed, so far as the vendees were concerned, by deliveries made by the Shedaker express, the trial court charged the jury as follows: "If the defendant, upon receipt of *bona fide* orders from persons residing in Florence township [Roebling] actually set apart and labeled goods, and then delivered these goods so set apart and labeled to a *bona fide* common carrier, or express company, as the agent of the buyer, there was no sale in the township of Florence, but the sale was completed in the city of Burlington. In this case the question of *bona fides*—that is, good faith— is to have your consideration. If, as has been contended by the defence, the employment of the Shedaker express was a *bona fide* transaction entered into in fact, and in good faith, by the people residing at Roebling, and they actually designated the express company as their agent, and authorized

Brown to deliver to the express company at his place of business in Burlington this liquor as the agent of the buyers, then the sales certainly took place when the liquor was delivered to the express company in Burlington. If, on the other hand, from the evidence you are convinced, as is contended by the state, that the employment of this express company was a subterfuge or ruse, employed by the defendant, and it was, in fact, an employment by the defendant of the express company, and the express company was, in fact, the servant of the defendant, and as such was his agent, and as such delivered the liquor in the township of Florence, the sale did, under these circumstances, take place in the township of Florence."

It is contended that the latter part of this instruction was erroneous, for the reason that, because Shedaker's express was a common carrier, upon delivery to its agent title to the liquor immediately vested in the buyer, and the transaction of sale was complete, and was completed in the town of Burlington. We think this contention unsound. If the express company was the agent of the defendant the situation was, in law, exactly the same as if the delivery had been made out of his, defendant's, own wagon, and the sale was not complete, under the case of State *v.* Kind, until the receipt of the liquor by the buyers. It is not necessary to consider whether or not the transaction would have been complete, and the title would have passed to the vendees if they had selected the express company as their agent to receive the liquor, for the trial court charged that this would have been the result, and if there was error in that instruction, it was favorable to the defendant and injurious to the state.

We have considered the other alleged errors and reasons for reversal discussed in the brief of the defendant. They all relate to alleged errors contained in the charge to the jury. We are not prepared to admit that there was any inaccuracy in the legal propositions laid down to the jury in the respects stated; but conceding that the inaccuracies which are asserted did, in fact, exist, they would not justify a reversal of the judgment upon the review provided by the one hundred

and thirty-sixth section of the Criminal Procedure act, for the reason that such inaccuracies, if they did exist, cannot be said to have produced manifest wrong or injury to the defendant; and when a person convicted of crime takes advantage of the liberal review provided by that section, he relinquishes any advantage which might come to him from mistakes made at the trial, unless he can show that he has suffered manifest wrong or injury by such mistakes.

The judgment under review will be affirmed.