THE  STATE,  DEFENDANT  IN  ERROR,  v.  SYLVESTER
MERKLE, PLAINTIFF IN ERROR.

Argued June 18, 1912—Decided November 18, 1912.

1. The provision of section 136 of the Criminal Procedure act of
   1898, by which the right of review is extended beyond errors
   assigned on the record or upon bills of exception, does not super-
   sede the review of such matters upon assignments of error or
   require that the plaintiff in error shall relinquish any of the ad-
   vantages of such a review.
2. Under the criminal procedure in force in this state, a review in
   criminal cases may be had under a single writ of error (1) for
   errors properly assigned upon the record or bills of exceptions.
   and (2) for matters appearing in the trial record disclosing that
   manifest wrong and injury has resulted to the plaintiff in error
   from the judicial conduct of the trial in respect to certain speci-
   fied matters.
3. The case of *State* v. *Lyons*, 41 *Vroom* 635, followed as to the con-
   struction of the one hundred and thirty-sixth section of the Crim-
   inal Procedure act.
4. Where the official character of a document was a relevant cir-
   cumstance on the merits of the defence, the refusal to admit such
   document in evidence was error that was not rendered harmless
   because there was oral testimony in the case as to same facts
   as those stated in such document.
5. An indictment, charging the soliciting of a bribe to vote for one
   Hannis, omitted to state that it was Hannis who was solicited,
   which was made the ground of a motion to quash, which was
   denied.   The motion disclosed that the fact that it was Hannis'
   name that was omitted was known to the defendant, who was
   in nowise prejudiced at the trial by such omission.   *Held*, that
   the denial of a motion to quash, being a matter of discretion, was
   not reviewable upon error assigned on a bill of exceptions.   *Held
   also*, that, conceding the right to review such a denial as a mat-
   ter of discretion under the one hundred and thirty-sixth section,
   the judgment could not be reversed for an omission in the indict-

ment that had not prejudiced the defendant in maintaining his defence upon the merits. *Pamph. L.* 1855, *p.* 649; *Rev.* 1875, *p.* 284, § 89; *Rev. Crim. Proc. Act* 1898, § 136.

On error to the Supreme Court, whose opinion is reported in 53 *Vroom* 172.

For the plaintiff in error, *Joseph M. Noonan.*

For the defendant in error, *Pierre P. Garven,* prosecutor of the pleas.

The opinion of the court was delivered by

GARRISON, J. · The judgment of the Supreme Court affirming the judgment of the Hudson Quarter Sessions convicting Sylvester Merkle of soliciting a bribe for his official vote is before us on "a writ of error bringing up the bill of exceptions as assigned and sealed in the cause." *Rev. Crim. Proc. Act* 1898, § 136. "The entire record of the proceedings had upon the trial" is also returned under the provision of the statute cited. The error with which this opinion deals is presented by an assignment of error based upon the bill of exceptions so signed and sealed.

Merkle was a member of the board of education of the town of West New York. The principal of one of the public schools in that town was Warren F. Hannis, whose reappointment was to come before the board on May 17th, 1909. Hannis testified at the trial that on the day before this meeting Merkle came to his house and told him that a combination of certain members of the board had been formed, one of whom was Von Scholtzke, and that Von Scholtzke said that he (Hannis) could have his job for $100; that he did not pay the money and failed to get his reappointment at the meeting held on the following evening at which Merkle voted against his reappointment. To rebut the inference that he had voted against Hannis' reappointment because the money said to have been solicited had not been paid, Merkle, after denying Hannis' charge *in toto,* sought to show that his vote against

Hannis was due to an official report that showed Hannis' unfitness for the place. Specifically what Merkle sought to show was that pursuant to an order of the board of education Mr. Bahrheidt, the supervising principal, had, for the information of the members of the board in the performance of their official duties, prepared a report showing the ratings of the various schools under his jurisdiction and that because of the rating of Hannis' school as shown by this official report he, Merkle, had voted against his reappointment. Of the relevancy of this line of proof and of its cogency if such official report was proved and produced there can be no sort of question.

Two witnesses were called by the defendant in his effort to introduce this report in evidence; one was Mr. Bahrheidt himself who testified that he had the report with him, the other was a Mr. Gompert who testified that he had the report in his pocket. This is what happened at the trial: The witness Bahrheidt on being asked, "Have you the rating with you?" replied, "I have."

"*Q.* Will you produce it?" to which the objection interposed by the prosecutor was, "It is incompetent, irrelevant and immaterial."

"The Court—Objection sustained." To which ruling a bill of exceptions was signed and sealed. The witness Gompert was asked:

"*Q.* Where is that rating?

"*A.* I have it in my pocket.

"*Q.* From whom did you get it?

"*A.* From Mr. Bahrheidt.

"Objection—It is immaterial, irrelevant and incompetent.

"The Court—Objection sustained."

To which ruling a bill of exceptions was signed and sealed.

Nothing can be clearer than that the rulings displayed by this bill of exceptions were erroneous and injurious to the plaintiff in error.

The Supreme Court, before whom the errors thus assigned were argued, practically conceded that the plaintiff in error had been erroneously deprived of testimony that was "mani-

festly," to use the words of the court, "both competent and relevant upon the question of the motive that induced Merkle to vote against the reappointment of Hannis."

Notwithstanding this conclusion the court below decided that the error thus manifestly erroneous did not justify a reversal of the judgment. This decision is placed upon two grounds in neither of which are we able to concur.

This is what the court said in its opinion: "It is difficult to understand upon what ground this line of testimony was excluded, for manifestly, such testimony was both competent and relevant upon the question of the motive which induced Merkle to vote against the reappointment of Hannis. But the mere fact that the rulings complained of were erroneous will not justify a reversal of the conviction before us. The defendant, instead of seeking a review upon a strict bill of exceptions, has seen fit to avail himself of the beneficent provisions of section 136 of the Criminal Procedure act which permits a defendant to bring up the whole record of the proceedings had upon the trial, and subject to the scrutiny of a court of review all rulings of the trial court either admitting or rejecting testimony whether objection was made thereto or not, every denial by the trial court of any matter which was a matter of discretion, and the whole charge of the jury whether a bill of exceptions was signed and sealed thereto or not. Having resorted to this method of review the defendant is, by the express words of the statute, entitled to a reversal of the judgment against him only when 'it appears' that he has 'suffered manifest wrong or injury' by some of such rulings on evidence, or denials of matter of discretion, or by something contained in the charge. The question, therefore, which these causes of reversal present for determination is not whether the rulings on evidence complained of were erroneous, but whether it appears, from an examination of the whole proceedings had at the trial, that the defendant suffered manifest wrong or injury thereby. An examination of these proceedings shows that Hannis himself, on the witness-stand, admitted that his rating as a principal was 'very poor,' and that the defendant testified that the rating of Hannis was 'the

poorest rating' of any principal in the town. No attempt was made on the part of the prosecution to controvert this statement, and it went to the jury practically an admitted fact. The excluded evidence was, therefore, merely cumulative, and it is not perceived how it can be logically said that the defendant has suffered manifest wrong or injury by the refusal to admit testimony which merely supports the existence of an uncontroverted fact that has been proved by other evidence in the case."

This opinion which was filed April 10th, 1912, followed the opinion of the same court in the case of *State* v. *Brown,* 53 *Vroom* 164, filed February 27th, 1912, in which, speaking of the review specially provided by the one hundred and thirty-sixth section of the Criminal Procedure act, it was said: "When a person convicted of crime takes advantage of the liberal review provided by that section he relinquishes any advantage which might come to him from mistakes made at the trial unless he can show that he has suffered manifest wrong or injury by such mistakes."

If, as may be gathered from the opinion, State *v.* Brown came up for consideration solely under the one hundred and thirty-sixth section, the language quoted, although broader than such a case required, was as applied to such a case a mere paraphrase of the section under which the case came up; if it was applied to errors regularly assigned upon bills of exceptions sealed at the trial it was a distinct novelty.

In the present case, which appears to be the first in which it has been done, the effect of applying the rule formulated in State *v.* Brown to errors assigned upon bills of exceptions is to construe the review provided by the one hundred and thirty-sixth section as superseding the review upon assignments of error of exceptions taken at the trial which by force of such construction are, when the entire record is brought up, not only negligible but entirely nugatory. For if a plaintiff in error by returning the entire record "with the writ of error bringing up the bill of exceptions as signed and sealed at the trial" (section 136), *ipso facto* relinquishes all advantage of such bill of exceptions the review accorded him is precisely as

if such exceptions had not been taken or if taken had not been brought up with the writ.

Under this construction of the statute plaintiffs in error perform an entirely futile act when they bring up their "bill of exceptions as signed and sealed in the cause," since the only review to which they are entitled in such case is one in which such bills of exception are treated as if they did not exist.

Such a construction of this much used statute is strangely at variance with the practice that has universally obtained in this court and in the court below in each of which, ever since the enactment of the revised Criminal Procedure act of 1898, it has been the constant practice of the bar to bring up with the entire record their bill of exceptions as specifically provided by the one hundred and thirty-sixth section and to argue and rely upon the errors assigned thereon; and it has been the equally constant practice of this court to consider and adjudicate the errors so assigned and argued. Indeed, in *State* v. *Miller*, 42 *Vroom* 527, where the entire record was returned, this court not only received and adjudicated errors assigned on a bill of exceptions but would hear nothing else. "In the case before us now," said Chancellor Magie, "upon the objection of the prosecutor, we feel bound to declare that plaintiff in error cannot require us to review any matters *except those presented by bills of exception and the assignments of error thereon.*" In *State* v. *Callahan*, 48 *Id.* 685, the point expressly decided by this court was presented by error assigned on a bill of exceptions although the entire record was brought up from the Supreme Court where both "assignments and causes" were examined. 47 *Id.* 426, 429.

The same is true of *State* v. *Brand*, 48 *Vroom* 486, and of *State* v. *Bertchey*, *Id.* 640, and of literally a host of cases which it would serve no useful purpose to enumerate, for the reason that the construction placed upon the one hundred and thirty-sixth section of the Criminal Procedure act by this court as categorically stated by Chancellor Magie in *State* v. *Lyons*, 41 *Id.* 635, has never been departed from or qualified in this court. That case required for its disposition a consideration of the nature of the review designed by the one

hundred and thirty-sixth section of the Criminal Procedure act. After referring to the fact that the earlier case of State *v.* Young had not called for such a consideration, Chancellor Magie said: "The present case seems to require a decision of the question of the extent of the review which the provisions of sections 136 and 137 compel the court to make."

The opinion then proceeds to construe these sections as follows:

"The legislation which is now contained in section 136 of the Criminal Procedure act was plainly designed to enlarge the privilege and right of one convicted of crime to question the propriety of his conviction beyond the limits of the privilege and right previously conferred by our statute, which permitted exceptions to be taken and required errors assigned thereon to be reviewed. *It was not designed to supersede a review of matters reviewable under assignments of error.* On the contrary, the relief permitted when it appeared from the record of the trial that the plaintiff in error had suffered manifest wrong or injury in certain respects, is to be given 'whether objection was made thereto or not' and, 'whether a bill of exceptions was settled, signed and sealed thereto and error assigned thereon or not.' *The plain purpose is to permit a review by writ of error—first, for errors properly assigned upon the record or bills of exception,* and *second,* for matters appearing in the trial record disclosing that manifest wrong or injury had been done to plaintiff in error by the course taken at the trial in respect to certain specified matters."

Words cannot more clearly state that, in the opinion of this court, the review of errors assigned on bills of exceptions was not taken away or superseded or affected by the statute under consideration. That this opinion confirmed the practice that had always theretofore obtained and that it has resulted in the continuance of such practice has already been pointed out.

The view thus expressed was no casual comment upon a topic alien to the one under consideration, *i. e.,* an *obiter dictum,* as is evident from the internal evidence of the opinion itself in which this point is introduced and treated with that

care and consideration that the learned writer displayed in all of his judicial work; while the fact that the point thus decided appears in the syllabus in our official reports shows how it was regarded and intended to be regarded. Furthermore, the rule that has obtained in this court since the November term of 1899 by which every opinion is in the hands of every judge for private consideration before it is considered in conference or voted upon in public, forbids us to assume that this carefully formulated construction of an important public statute, to which there was no dissenting voice, was not promulgated by this court as its unanimous view.

The controlling effect of a judicial pronouncement of this character upon the court that declares it rests in sound judicial policy; upon inferior courts it has the force of authority.

It would be entirely foreign to such policy and contrary to our established judicial habit as well as manifestly unfair to counsel and the clients whose litigation they direct, for us now to say that a proceeding taken in reliance upon our opinion had the opposite effect from that given to it by such opinion. Under such a vacillating policy no counsel however careful could safely advise a client or direct his litigation.

The present case is an example of this. When the experienced counsel engaged in this case was considering the expediency of supplementing the points covered by his bill of exceptions by returning the entire record therewith he had a right to rely not only upon a uniform and unchallenged course of practice in this court, but also upon the express declaration of this court in confirmation of such practice. Having thus determined his course of action he ought not now to be met with the assertion that by relying upon our opinion he had jeopardized his client's interests and had unwittingly relinquished all advantage of his exceptions taken upon the trial.

Sound judicial policy requires that the declaration of this court in State v. Lyons as to the meaning and effect of this statute be adhered to until some change in the statutory language there construed requires or at least permits of a dif-

ferent construction. Until that has been done by this court it is not open to any court to place a new and different construction upon the language of this statute.

In so far therefore as relief was denied the plaintiff in error upon a construction of the one hundred and thirty-sixth section that conflicted with State *v.* Lyons, the court below was in error.

This brings us to the consideration of the second ground on which the plaintiff in error was denied relief in the court below, viz., that the exclusion of the official report although erroneous was harmless because there was oral testimony at the trial that Hannis' rating was "poor" or "the poorest."

The testimony thus referred to goes only to the *fact* of Hannis' rating and not to the whole or even to the most important part of the defence which was the *official* character of the excluded document.

Merkle's defence was that his vote against Hannis had been determined by an official report prepared under the order of the board of education to guide its members in the performance of their official duty. The official report which was the essential feature of this defence was erroneously excluded and all that the jury had was oral testimony that as a fact Hannis' rating was the poorest. This did not in any practical way compensate the accused for the wrongful exclusion of the document which, because of its official character, had influenced his vote. The effect upon the jury of such an official report would most certainly and very properly be far greater than mere oral testimony to the same state of facts. Merkle had been influenced not by the fact that Hannis had the poorest rating, but by the official report of that fact to him in his official capacity.

The proper evidence and the best evidence was offered by the accused on the merits of his defence and was excluded. He had a right to have this evidence and if he would have had any substantial advantages from its admission that he did not have from mere oral testimony the error of its wrongful exclusion was not cured.

That the defendant's case was materially weakened by the wrongful exclusion of the official report is too clear to require demonstration.

Moreover the doctrine as to cumulative testimony applies properly to testimony of the same or a lower grade than that already received, whereas the production of a document about which there has been some oral testimony is evidence of a higher grade to which the term cumulative cannot properly be applied.

For these reasons we conclude that the exclusion of the official report was an injurious error that requires the reversal of the judgment of the Supreme Court to the end that a *venire de novo* may be awarded.

Counsel for the accused upon a motion to quash the indictment pointed out that it omitted to charge that the accused "had gone to Hannis and solicited money for his vote." The motion was denied and a bill of exceptions allowed to the defendant. Whether this was proper practice, we need not now inquire, since such denial, being a matter of discretion, is not placed in train for review by such procedure. *State* v. *Dayton,* 3 *Zab.* 49; *State* v. *Proctor, 26 Vroom* 472.

The matter is also presented by a cause for reversal under the one hundred and thirty-sixth section. Here again we need not inquire whether the motion to quash was "a proceeding had at the trial" and hence brought under review by the trial record returned under that section, for the reason that counsel made his motion upon the express ground that it was the omission of Hannis' name that rendered the indictment defective. Having this knowledge before the trial, as counsel in his brief very frankly admits, the trial proceeded without the least embarrassment or prejudice to the defendant from this source. Regarding therefore the refusal to quash as a denial of a matter of discretion under the one hundred and thirty-sixth section, we are expressly prohibited from reversing the judgment for an omission in the indictment that did not prejudice the defendant on the merits. The omission in this case did not render the indictment one in which no offence was charged; it charged an offence but charged it de-

fectively. Such an omission in an indictment may or may not prejudice the defendant on the trial upon the merits. In the present case it clearly did not, and in such a situation the very statute invoked by the plaintiff in error forbids in terms a reversal for such an omission. This statutory prohibition applies equally to the error assigned in the bill of exceptions, for it is neither a new provision nor confined to errors reviewable solely under the one hundred and thirty-sixth section. For more than half a century this feature of our criminal law has been on the statute books. Enacted originally as section 2 of the act of 1855 (*Pamph. L., p.* 648), it later became section 89 of the Revised Criminal Procedure act (*Rev., p.* 284), and is now found in the one hundred and thirty-sixth section of that act as revised in 1898. It has been consistently applied to matters of substance as well as of form. *State* v. *Donnelly,* 2 *Dutcher* 463, 493; *State* v. *Hunter,* 11 *Vroom* 495, 543; *State* v. *Stanton,* 16 *Id.* 379, 388.

The transfer of this provision by the revisers of the Criminal Procedure act of 1898 to the one hundred and thirty-sixth section of that act has not changed its character or limited its scope.

WALKER, CHANCELLOR (dissenting). My dissent from the opinion of the majority of the court in this case is based upon the construction of section 136 of the Criminal Procedure act. *Pamph. L.* 1898, *p.* 915. The majority of the court reached the conclusion that the judgment of guilty rendered against the defendant in the Hudson Quarter Sessions should be reversed because it was harmful error for the trial judge to have excluded the defendant's offer of a written statement prepared by the supervising principal of schools of the town of West New York which showed that Hannis, the school principal, who was up for re-election, had the poorest rating of all the school principals in the town—the defence being that Merkle voted against Hannis by reason of that rating and not because he had solicited a bribe from Hannis which the latter refused to give him. I am in entire agreement with all that

the Supreme Court said in its opinion relating to this officer and its rejection. To use the words of the Supreme Court:

"It is difficult to understand upon what ground this line of testimony was excluded, for, manifestly, such testimony was both competent and relevant upon the question of the motive which induced Merkle to vote against the reappointment of Hannis."

But the harmfulness of the ruling complained of, as a practical fact, was done away with by the admission of Hannis on the witness-stand, that his rating as a principal was very poor, and the defendant himself, who was a member of the board of education of the town of West New York, testified that the rating of Hannis was the poorest of any of the principals in the town, and there was no contradiction of this testimony. Therefore, the case went to the jury with the rating of Hannis proved as an uncontroverted fact.

It is true that the objection to the court's exclusion of the written report resides in a bill of exceptions, and, had the case been brought here on a strict bill of exceptions, it must necessarily have resulted in a reversal of the judgment below. But the entire record of the proceedings had upon the trial was returned by the plaintiff with his writ of error bringing up the bill of exceptions signed and sealed in the cause, in pursuance of section 136 of the Criminal Procedure act above mentioned. In this posture of a criminal cause, the statute provides:

"On the argument such entire record shall be considered and adjudged by the appellate court; and if it appear from such record that the plaintiff in error on the trial below suffered manifest wrong or injury, either in the admission or rejection of testimony, whether objection was made thereto or not, or in the charge of the court, or in the denial of any matter by the court, which was a matter of discretion, whether a bill of exceptions was settled, signed and sealed thereto, or error assigned thereon or not, the appellate court shall remedy such wrong or injury and give judgment accordingly, and order a new trial."

Now, by the very language of section 136, when the entire record of the proceedings had in a criminal cause is brought up for review, the "entire record *shall be considered and adjudged* by the appellate court." From the kind of review thus required, the bill of exceptions, in my judgment, is placed on a level with the specification of causes in the record relied upon for relief or reversal, as provided in section 137. In fact, the latter section goes further and provides that the plaintiff in error "shall not be confined to his bill of exceptions."

Two kinds of review in criminal cases concededly exist in this state—one a review on a strict bill of exceptions signed and sealed, and the other on the entire record of the proceedings had upon the trial of the plaintiff in error; but each should not exist independently of the other on one and the same review.

The entire record cannot be brought up without the aid of at least one exception signed and sealed. The one hundred and thirty-sixth section says so in plain terms; and it and the succeeding section (137) make provisions concerning one, and only one, kind of review. It is anomalous indeed if a defendant in a criminal case, on removing the entire record of the proceedings to an appellate court, is unable to obtain relief on a perfectly good cause for reversal which appears in the record, as to which, however, he took no exception on the trial and only claimed he was entitled to relief under section 136, but is able, on that same record, to demand of the appellate court a reversal of the judgment against him, because there resides in his strict bill of exceptions a valid objection to some proceeding in the court below, while elsewhere in the record it palpably appears that he suffered no wrong or injury whatever in respect to the matter of which he complains.

If any adjudication in this state decides that this dual review of a judgment in a criminal case may be had in the appellate court, when the entire record of the proceedings in the trial court is removed there under section 136, it is *State v. Lyons,* 41 *Vroom* 635, where Chancellor Magie, speaking for this court (at *p.* 636), remarked that the legislation contained in section 136 was not designed to supersede the review under

assignments of error, but, on the contrary, permitted relief when it appeared from the record that the plaintiff in error had suffered manifest wrong or injury whether objection was made thereto or not, and *whether a bill of exceptions was settled, signed and sealed thereto and error assigned thereon or not.* There is certainly nothing in this statement of the learned Chancellor to the effect that a dual review may be had in causes taken up under section 136. Of course, the act under discussion does not operate to nullify the exceptions taken on the trial; it permits them to stand and be reviewed along with the causes assigned for reversal. This is borne out by the expression *"whether objection was made thereto or not"* —the plain meaning being that if objection were made then just as certainly the relief afforded by section 136 is to be granted as though the objection had not been taken at the trial and was only specified as a cause for reversal under section 137. Nor does the further language of the learned Chancellor (on page 639) to the effect that the purpose of the act is to permit a review for errors assigned *and* for matters appearing in the record disclosing that manifest wrong has been done to the plaintiff by the course taken at the trial, make it necessary to save to the defendant the advantage of a strict bill of exceptions brought up with the entire record of the case, when that record discloses that no wrong or injury was done to the defendant on the trial in the court below.

The foregoing observations lead to the inevitable conclusion that the Supreme Court in the case *sub judice* rightly decided that having resorted to a review of the entire proceedings had upon the trial, "the defendant is, by the express words of the statute, entitled to a reversal of the judgment against him only when 'it appears' that he has 'suffered manifest wrong or injury' by some of such rulings on evidence, or denials of matter of discretion, or by something contained in the charge. The question, therefore, which these causes of reversal present for determination, is not whether the rulings on evidence complained of were erroneous, but whether it appears, from an examination of the whole proceedings had at the trial, that the defendant suffered manifest wrong or injury thereby.

\* \* \* The excluded evidence was, therefore, merely cumulative, and it is not perceived how it can be logically said that the defendant has suffered manifest wrong or injury by the refusal to admit testimony which merely supports the existence of an uncontroverted fact that has been proved by other evidence in the case."

Mr. Justice Trenchard authorizes me to say that he is in entire accord with the views above expressed. In our opinion, the judgment of the court below should be affirmed.

*For affirmance*—THE CHANCELLOR, TRENCHARD, WHITE, JJ. 3.

*For reversal*—GARRISON, VOORHEES, MINTURN, KALISCH, BOGERT, VREDENBURGH, CONGDON, TREACY, JJ. 8.